## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PATRICIA HALLERAN,

                Plaintiff,

                                            Case No. 8:15-cv-850-T-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

    Patricia Halleran ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of fibromyalgia, extreme fatigue, memory loss, and depression.  See Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed August 21, 2015, at 300.  Plaintiff filed applications for DIB and SSI on November 1, 2010, alleging in both an onset date of March 15, 2005.  Tr. at 272-75 (DIB); Tr. at 266-69 (SSI).  Plaintiff's applications were denied initially, Tr. at 128-29 (DIB); Tr. at 134-35 (SSI), and were denied upon reconsideration, Tr. at 143-44 (DIB); Tr. at 149-50 (SSI).

    At a hearing on August 16, 2013, an Administrative Law Judge ("ALJ") heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by counsel.  Tr. at 55-86. On September 26, 2013, the ALJ issued a Decision finding Plaintiff

---

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed August 21, 2015; Reference Order (Doc. No. 16), entered August 24, 2015.

not disabled "from March 15, 2005, through the date of th[e D]ecision," and denying Plaintiff's claim.  Tr. at 50; see Tr. at 43-50.  Plaintiff then requested review by the Appeals Council, Tr. at 32, and submitted evidence to the Council in the form of a brief authored by her attorney and a medical record from Countryside Arthritis Center, dated March 5, 2012, Tr. at 23; see Tr. at 323 (attorney's brief); Tr. at 473 (medical record). On February 3, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 18-21.  On April 8, 2015, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

The one issue Plaintiff raises on appeal concerns the ALJ's credibility assessment, and specifically, whether the ALJ erred "in failing to properly evaluate the Plaintiff's pain complaints and alleged side effects from her medication."   Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 24; "Pl.'s Mem."), filed January 22, 2016, at 2; see id. at 5-7. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 25; "Def.'s Mem.") on March 17, 2016.  After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons stated below.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[2]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 45-50. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 15, 2005, the alleged onset date." Tr. at 45 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "had no severe impairment prior to the date last insured," but he found Plaintiff "has had the following severe impairments since the date of application for [SSI]: fibromyalgia; minimal disc bulge of the lumbar spine; depression; and, anxiety." Tr. at 45-46 (emphasis and citations omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 46 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"): "[Plaintiff can] perform light work as defined in 20 CFR 416.967(b) except [Plaintiff] requires a sit/stand option and cannot climb. [Plaintiff] cannot follow complicated materials or multi-task, and is therefore limited to simple, repetitive work." Tr. at 47 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a medical assistant or property manager. Tr. at 49 (emphasis and citation omitted). At step

five, the ALJ considered Plaintiff's age (thirty-eight (38) years old on the alleged disability onset date), education ("at least a high school education"), work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 49 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs a "silverware wrapper," an "assembler," and a "document preparer." Tr. at 50 (capitalization omitted). The ALJ concluded that Plaintiff "has not been not under a disability . . . from March 15, 2005, through the date of th[e D]ecision." Tr. at 50 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the

Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The single issue Plaintiff raises is whether the ALJ erred by "failing to properly evaluate the Plaintiff's pain complaints and alleged side effects from her medication." Pl.'s Mem. at 2. Plaintiff presents this mainly as an issue regarding the ALJ's assessment of her credibility, setting out the legal standard applicable to a claimant's subjective complaints and symptoms. <u>See id.</u> at 5-7. Plaintiff argues that the ALJ failed to adequately discuss certain medical findings, observations, and testimony related to her medication side effects. <u>Id.</u> at 6-7. She points to her hearing testimony that she "has problems finishing tasks," that she "has confusion," and that she feels like she is "in a haze at times." Pl.'s Mem. at 6 (citing Tr. at 75). Plaintiff then notes her testimony that she takes several medications, including tramadol, gabapentin, and Klonopin, and that she was previously taking oxycodone, morphine sulphate, and Xanax. <u>Id.</u> at 6 (citing Tr. at 76-77).

For medical findings, Plaintiff points to a treatment record from March 23, 2011 in which her treating pain management physician, Lee Ann Brown, D.O.,[3] listed Plaintiff's symptoms as including night sweats, fatigue, headaches, blurred vision, problems sleeping, and crying spells, and Dr. Brown described Plaintiff as anxious, drowsy, lethargic, and appearing overmedicated. <u>Id.</u>; Tr. at 428.[4] Dr. Brown indicated on this treatment record that Plaintiff's pain was minimal with medications but severe without them. Tr. at 427.

---

[3]     Plaintiff does not refer to the doctor by name in discussing the March 23, 2011 treatment note, <u>see</u> Pl.'s Mem. at 6, but the note itself is signed by Dr. Brown, <u>see</u> Tr. at 427-29.

[4]     Dr. Brown's treatment notes in the administrative record extend from March 23, 2011 to May 23, 2011. The same treatment notes (in slightly different formatting) are included twice: on pages 398-406 and on pages 421-29.

Plaintiff remarks that the state agency opinions in the record (to which the ALJ gave "considerable weight," Tr. at 48) "do not address side effects from medications." Pl.'s Mem. at 6. Suggesting how the failure to recognize her alleged medication side effects impacts her case, Plaintiff argues that even assuming she could "physically perform the work activity set forth in the [ALJ's] decision," her side effects "could reasonably affect her persistence and pace." Id. at 6. Finally, Plaintiff asserts that although the ALJ "need not accept [her] testimony regarding her cognitive functioning due to pain and/or side effects from her medications, . . . he should have at least discussed the observations contained in Exhibit 11F regarding [her] cognitive functioning." Id. at 7; see Tr. at 454-57 (Exhibit 11F).

In support of the ALJ's Decision, Defendant asserts "the ALJ properly considered Plaintiff's credibility and found her not entirely credible." Def.'s Mem. at 5 (citing Tr. 47-48). Defendant asserts that the record evidence supports the ALJ's finding that Plaintiff improved with medication and the suggestion that Plaintiff exhibited drug-seeking behavior in her treatment. Id. at 10. As to Plaintiff's alleged medication side effects, Defendant argues that "one episode of increased symptoms due to medication abuse does not contradict or undermine the ALJ's rationale." Id. at 12. Furthermore, in response to Plaintiff's assertion that the ALJ "should have at least discussed the observations contained in Exhibit 11F regarding [her] cognitive functioning," Pl.'s Mem. at 7, Defendant observes that the document in Exhibit 11F "does not provide any information other than indicating a diagnosis of memory loss," which alone "does not establish any particular functional limitation," Def.'s Mem. at 12 (citing Tr. at 454-55; Moore, 405 F. 3d at 1213 n.6; Wind v. Barnhart, 133 F. App'x 684, 690 (11 th Cir. 2005)).

"In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." Walker v. Comm'r of Soc. Sec., 404 F. App'x 362, 366 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv)). A claimant seeking to establish a disability based on testimony of pain or other subjective symptoms must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")).  As a claimant has the burden of proving her disability, she "must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." Walker, 404 F. App'x at 366 (emphasis added) (citing Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003)).

"[C]redibility determinations are the province of the ALJ." Moore v. Barnhart, 405 F. 3d 1208, 1212 (11th Cir. 2005).  The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225.  "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R.

§ 404.1529(c)(3)(i)-(vi).  After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but he found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible."  Tr. at 47.  The ALJ did not specifically mention any medication side effects in the Decision, but the ALJ articulated specific reasons for finding Plaintiff not entirely credible and otherwise concluding that the evidence of record does not support a finding of disability based on Plaintiff's alleged physical and mental limitations.  See Tr. at 47-48.

Regarding pain complaints, the ALJ noted Plaintiff's "pain is confirmed by only very minimal objective indicia," and the ALJ found overall that "the medical evidence is weak, and rife with credibility concerns."  Tr. at 48.  The credibility concerns addressed by the ALJ include Plaintiff's drug-seeking behavior in light of her minimal evidence of persistent pain. As the ALJ noted, for instance, Plaintiff's treating pain management specialist, Nabil S. Gerges, D.O., discharged her from treatment in December 2010 "due to conflicting stories regarding early requests for drug refills."  Tr. at 48 (citing Exhibits 4F, 5F, 7F (medical records, including treatment records of Dr. Gerges and Dr. Brown));[5] Tr. at 348 (Dr. Gerges's December 2010 treatment record stating why Plaintiff was discharged).

Similarly, regarding Plaintiff's alleged mental impairments, the ALJ found that Plaintiff "submitted little evidence to support her allegations, and remains capable of work activities

_____

[5]      In the administrative transcript, Exhibit 4F is located on pages 345-67, Exhibit 5F is on pages 368-417, and Exhibit 7F is on pages 430-42.

with the mental limitations found herein." Tr. at 48.  The ALJ observed that Plaintiff received "a score of 29 out of 30" on "a mini-mental status examination," which the ALJ remarked was "hardly indicative of disabling mental symptoms."  Tr. at 48 (citing Exs. 3F, 5F);[6] see Tr. at 341, 408 (mini mental status examination score).  The ALJ also observed that mental health treatment notes in the record "have routinely shown normal mental status examination findings and global assessment of functioning (GAF) scores in at least the middle 50s."  Tr. at 48 (citing Ex. 12F).[7]

Upon review, the undersigned concludes the ALJ's findings regarding Plaintiff's credibility and alleged limitations are supported by adequate reasons and substantial evidence.  There is very little evidence in the record to suggest Plaintiff was limited in any way by medication side effects, and as the ALJ specifically noted, see Tr. at 48, there is also little evidence to support Plaintiff's pain complaints.

Between September and December 2010, for instance, treatment records indicate that Plaintiff's pain had improved by eighty percent, usually resulting in a pain rating of one or two out of ten, and the records also reflect that Plaintiff experienced no side effects from medications. See Tr. at 346, 350, 353, 356, 359; see also Tr. at 112, 121 (state agency non-examining consultant reviewing Plaintiff's medical records in November 2011, stating Plaintiff has "[n]o side effects from medications").  Moreover, as Defendant correctly observes, Plaintiff's mental status examinations "were generally unremarkable in 2010, 2012, and 2013."  Def.'s Mem. at 12 (citing Tr. at 341, 458, 460, 462, 464, 466).

---

[6]      Exhibit 3F is located on pages 339-44 of the transcript, and Exhibit 5F is on pages 368-417.

[7]      Exhibit 12F is located on pages 458-70 of the transcript.

Other evidence, beginning in December 2010, further supports the ALJ's credibility finding. As noted by the ALJ, Plaintiff was discharged from treatment by her pain management doctor, Dr. Gerges, on December 27, 2010 because of Plaintiff's apparent drug-seeking behavior. Tr. at 48; see Tr. at 348. Specifically, Dr. Gerges discharged her due to "conflicting stories regarding the lost prescriptions between the pharmacy and the patient." Tr. at 348 (capitalization omitted). That same month, Plaintiff also sought oxycodone in a hospital emergency room, similarly explaining that the pharmacy had lost her prescription. Tr. at 414. Plaintiff told the doctors "that she had been sent [to the emergency room] by Dr. Arora's office to be admitted for both a lumbar puncture and an MRI of the brain." Tr. at 414. When contacted by the emergency room staff, however, Dr. Arora's office denied sending Plaintiff there. Tr. at 414. The ALJ noted in the Decision that this incident "further confirmed" Plaintiff's "questionable behavior." Tr. at 48.

A few months later, in March and April 2011, Dr. Brown observed that Plaintiff was lethargic and "unusually drowsy." Tr. at 425, 428. In the March 2011 note that Plaintiff cites to support her testimony regarding medication side effects, Dr. Brown wrote that Plaintiff "appear[ed] overmedicated today although she denie[d] overtaking her medications," and so Dr. Brown decided to decrease the medications. Tr. at 428-29. On May 23, 2011, Dr. Brown described Plaintiff as well oriented but "anxious, dysphoric and tearful." Tr. at 422 (capitalization omitted). On that date, Dr. Brown restricted Plaintiff to two weeks of medications because Plaintiff's urine drug screen was "abnormal," in that it revealed "no oxycodone." Tr. at 422. According to Dr. Brown, Plaintiff "state[d] she ran out early." Tr. at 422.

Viewed in light of the evidence as a whole, including suggestions of her drug-seeking behavior, Dr. Brown's records do not support a finding that Plaintiff suffered from medication side effects. To the contrary, the records support the ALJ's credibility finding, thus giving the ALJ further basis to discount Plaintiff's testimony to the extent it suggests she experiences disabling side effects from medications.

As to Plaintiff's assertion that the ALJ should have discussed Exhibit 11F, Defendant correctly observes that the record in this exhibit is merely "a statement from [Ajak Arora, M.D.] explaining that he was unable to complete a neurological questionnaire because he only saw Plaintiff one time in 2010 and Plaintiff never followed up." Def. Mem. at 12; Tr. at 454-55. The document states that Plaintiff's neurological diagnosis is "[m]emory loss," but it provides no further information or support for that diagnosis, and there is nothing relating that diagnosis to Plaintiff's pain complaints or side effects. Tr. at 454. As such, the document from Dr. Arora, Exhibit 11F, fails to offer any support for Plaintiff's allegations regarding limited cognitive functioning due to pain or medication side effects.

Dr. Arora's examination notes also fail to support a finding that Plaintiff has any disabling limitation in cognitive functioning. On September 27, 2010, Dr. Arora examined Plaintiff and noted that she was alert and well oriented, with "normal attention span and concentration," and as noted above, she scored a 29 out of 30 on her mini mental status exam. Tr. at 341; see Tr. at 48 (ALJ discussing Dr. Arora's findings).

Considering the record as a whole, the ALJ did not err in assessing Plaintiff's credibility or her alleged symptoms, medication side effects, or other limitations. The undersigned concludes, overall, the ALJ's findings are supported by substantial evidence.

-11-

## V.  Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to 42 U.S.C.

§ 1383(c)(3) and sentence four of § 405(g), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on August 29, 2016.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

clr
Copies to:
Counsel of record